## Grants for Historical Projects by Department of Community Affairs

CREAMER, Attorney General, June 16, 1972.—You have asked us to review an opinion of former Attorney General William Sennett, dated May 1, 1970, herewith attached. That opinion dealt with the question of whether the Department of Community Affairs might lawfully make grants-in-aid to political subdivisions under the Land and Water Conservation and Reclamation Act of January 19, 1968, P. L. (1967) 996, 32 PS §5101, et seq., Project 500 Act, "to finance the development, restoration, preservation and conservation of historical sites."

You are informed that while Mr. Sennett's conclusions with respect to the actual project considered in that opinion, the North Side Post Office in Pittsburgh, may have been correct, because of the peculiar *indoor* nature of the project involved, his broad negative language responding to the above question is erroneous and must be overruled. Specifically, Mr. Sennett's interpretation of the Project 500 Act as evidencing a legislative intent that only section 16(a)(3), 32 PS §5116(a)(3), funds, i.e., funds allocated to the Department of Forests and Waters, Fish and Game Commissions, and the Historical and Museum Com-

mission, be used for development of structures of historical significance is too restrictive and ignores several sections of the Project 500 Act evidencing a contrary intent.

Section 16(a)(4), 32 PS §5116(a)(4), provides:

"(4) To the Department of Community Affairs, the sum of seventy-five million dollars ($75,000,000) for State grants-in-aid to political subdivisions to pay up to fifty percent of the cost (i) of development of county and municipal park and recreation lands including lands acquired under the Act of June 22, 1964, (P. L. 131), known as the "Project 70 Land Acquisition and Borrowing Act," to be used for county and municipal park and recreation purposes; (ii) to acquire and develop additional county and municipal park, recreation, and open space lands in those regions where the statewide outdoor recreation plan indicates a need for those lands; and (iii) for studies conducted to determine park and recreational needs and the location of facilities."

While it is true that this section does not include the word "historical," it does specifically make reference to lands acquired under the "Project 70 Act." Such lands were acquired under the following provision:

"(4) For State aid to political subdivisions to pay fifty percent of the cost of lands to be acquired by such political subdivisions for recreation, conservation and *historical* purposes, not to exceed twenty million dollars ($20,000,000)": 72 PS §3946.16(a)(4). (Italics supplied.)

It is clear, therefore, that "Project 70" lands can be developed with Project 500 funds for historical purposes in those situations where they were acquired for that purpose.

In addition, it is evident that section 16(a)(4) must relate back to section 2(4) of the Project 500 Act, 32 PS

§5102(4), entitled "Findings and Declarations of Policy:"

"(4) The Commonwealth of Pennsylvania must act to develop and to assist local governments to develop lands that have been acquired for recreation, conservation and *historical* use so that the public may have access and enjoyment of these facilities at the earliest possible time." (Italics supplied.)

Section 16(a)(4) is the only "Allotment of Moneys" section that deals with grants-in-aid to local governments for recreational purposes. Section 16(a)(3) deals with the development of *State* recreational areas.

We must conclude, therefore, that the legislature did intend to make Project 500 funds available to local governments for the development of lands for recreational and historical use and that section 16(2)(4) is the vehicle by which the legislature intended to make those funds available. Otherwise the "Allotment of Moneys" provision of the law (section 16) would be in conflict with the "Findings and Declaration of Policy" section, a conflict that must be avoided if possible. See Statutory Construction Act of May 28, 1937, art. IV, sec. 63, 46 PS §563.

## HISTORIC PROJECTS UNDER PROJECT 500

SENNETT, Attorney General, May 1, 1970.—You have asked whether or not the Department of Community Affairs may utilize the resources of the Land and Water Conservation and Reclamation Fund to finance the development, restoration, preservation and conservation of historical sites. The specific project which is presented for review is a proposal to restore the 73-year-old North Side Post Office for use as an historic museum. The North Side Post Office and attendant real estate has been given to the City of Pitts-

burgh by the Federal Government conditioned upon the use of this historical landmark as a museum.

The Legislature, through The Land and Water Conservation and Reclamation Act of January 19, 1968, (No. 443) 32 PS §5101, et seq., known as The Project 500 Act, has found that the Commonwealth of Pennsylvania must act to develop and to assist local governments to develop lands that have been acquired for recreation, conservation and historical use. The act then goes on to delegate to certain agencies of State government certain responsibilities in implementing the foregoing findings.

Section 16(a)(4) of the Project 500 Act empowers the Department of Community Affairs to assist political subdivisions with grants-in-aid to develop county and municipal park and recreation lands. Although section 3 of the same statute defines the phrase "recreation and historical purposes" that phrase is not used in the section applicable to the Department of Community Affairs, instead, the powers of the Department of Community Affairs are limited to providing assistance for the acquisition and development of park, recreation and open space lands.

The development of structures of historical significance is specifically mentioned in section 16(a)(3) only in connection with funds allocated among the Department of Forests and Waters, Fish and Game Commissions and the Historical and Museum Commission. The Historical and Museum Commission is specifically given authority over development of historical features and the advisability of such development whenever lands to be planned and developed as public outdoor recreation areas have landmarks, sites or structures of historical significance on them.

Specific mention of historical projects exclusively in relation to the Historical and Museum Commission

leads to the conclusion that the Department of Community Affairs lacks the authority to fund such projects. Additionally, it is doubtful that the Historical and Museum Commission would have the authority to fund the North Side Post Office project since the intention of the Project 500 Act is to fund historical restoration projects only when said projects relate to and are a part of a public outdoor recreation area.